PLYMOUTH CHARTER TOWNSHIP v DEPARTMENT OF SOCIAL
SERVICES

Docket No. 136270. Submitted December 10, 1992, at Detroit. Decided
March 1, 1993, at 9:30 A.M. Leave to appeal denied, 442 Mich 920.

Plymouth Charter Township brought an action in the Wayne
Circuit Court against the Department of Social Services, Mid-
west Development Services, Inc., and Joseph Hudson, seeking
an injunction restraining the department from issuing licenses
to certain adult foster care facilities if the department failed to
comply with (1) the notice and placement requirements of the
Adult Foster Care Facility Licensing Act, MCL 400.701 et seq.;
MSA 16.610(51) et seq., and (2) the Township Rural Zoning Act,
MCL 125.286(a); MSA 5.2963(16a), and an order directing the
department to revoke a license issued to Midwest for a facility
in the township on the basis of noncompliance with the acts.
The court, Charles Kaufman, J., issued a permanent injunction
against the department with respect to further licensures, but
exempted the Midwest facility in the township, determining
that the Adult Foster Care Facility Licensing Act and the
Township Rural Zoning Act, as applied to commercial adult
foster care facilities, do not conflict with, and are not
preempted by, the Fair Housing Act, as amended by the Fair
Housing Amendments Act of 1988, 42 USC 3601 et seq. The
department appealed.

The Court of Appeals held:

The state statutes at issue in this case, which require the
Department of Social Services to notify the clerk of a local
government of an application for an adult foster care facility in
the locality, assess the concentration of adult foster care facili-
ties in the locality, assess whether a licensed adult foster care
facility exists within a 1,500-foot radius of the proposed site,
and notify owners of property located within 1,500 feet of the
proposed site, do not conflict with, and are not preempted by,
the Fair Housing Act. The state statutes regulate commercial

REFERENCES

Am Jur 2d, Civil Rights § 249.
See ALR Index under Civil Rights.

institutions or enterprises and therefore do not run afoul of the Fair Housing Act proscription against state and local regulations that prohibit handicapped people from residing wherever they choose.

Affirmed.

CIVIL RIGHTS — FAIR HOUSING ACT — ADULT FOSTER CARE FACILITY LICENSING ACT — TOWNSHIP RURAL ZONING ACT.

Requirements imposed by the Adult Foster Care Facility Licensing Act and the Township Rural Zoning Act on the Department of Social Services concerning the placement of proposed adult foster care facilities and notice to the affected local governments and owners of adjoining property do not conflict with, and are not preempted by, the Fair Housing Act (42 USC 3601 *et seq.*; MCL 125.286[a], 400.701 *et seq.*; MSA 5.2963[16a], 16.610[51] *et seq.*).

*Law, Hemming, Essad & Polaczyk, P.C.* (by *C. Gerald Hemming*), for Plymouth Township.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Stephen H. Garrard,* Assistant Attorney General, for Department of Social Services.

Amici Curiae:

*Kathleen N. Harris,* for Michigan Protection and Advocacy Service, Association for Retarded Citizens of Wayne County, Wayne State University Developmental Disabilities Institute, United Cerebral Palsy Association of Metro Detroit, Inc., Association of Retarded Citizens of Michigan, Association for Retarded Citizens of Oakland, and Epilepsy Center of Michigan.

Before: SHEPHERD, P.J., and BRENNAN and L. P. BORRELLO,* JJ.

SHEPHERD, P.J. Defendants appeal as of right

* Circuit judge, sitting on the Court of Appeals by assignment.

from a permanent injunction restraining defendant Department of Social Services from issuing any further licenses for the operation of adult foster care facilities without compliance with the Adult Foster Care Facility Licensing Act, MCL 400.701 *et seq.*; MSA 16.610(51) *et seq.*, and the Township Rural Zoning Act, MCL 125.286(a); MSA 5.2963(16a). The effect of the trial court's order was to require commercial entities operating such facilities to comply with state and local zoning regulations. We affirm.

The facts of this case are as follows. On August 10, 1989, defendant Midwest Developmental Services, Inc. (MDS) applied for a license from the DSS to operate a commercial, for-profit adult foster care facility housing six or fewer handicapped people within the plaintiff Charter Township of Plymouth. The site in question was a house located in an R-1 zoning district, which is restricted to single residential dwellings and which normally precludes the use of the property for business or commercial use. Under the Michigan Zoning Enabling Acts, as amended in 1977, an adult foster care facility for six or fewer people was classified as a residential use of property and thus permitted in a residential zone. In addition, an adult foster care facility was exempted from local zoning requirements if the facility was issued a proper license by the DSS under the terms and requirements of the Adult Foster Care Licensing Act and the Township Rural Zoning Act.

In the spring of 1990, plaintiff learned that the DSS had issued a license to MDS to operate an adult foster care facility at the proposed site within the township without complying with various statutory requirements. Specifically, plaintiff alleges that the DSS was required to: (1) notify the clerk of the local government forty-five days before the

issuance of the license that it had received the license application, (2) assess the concentration of adult foster care facilities in the local governmental unit, (3) assess whether a licensed adult foster care facility exists within a 1,500-foot radius of the proposed site, and (4) give notice to property owners located within 1,500 feet of the proposed site. MCL 400.732(1); MSA 16.610(82)(1); MCL 125.286a(4); MSA 5.2963(16a)(4). The DSS claimed that it was not required to comply with these statutory provisions because the statutes had been preempted by the federal Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, effective March 13, 1989, (FHA), 42 USC 3601 *et seq.*

When MDS attempted to operate the site as an adult foster care facility, the township filed a request for injunctive relief to restrain the DSS from licensing new adult foster care facilities without complying with all statutory requirements and to order the DSS to revoke the licensing of MDS until properly licensed under Michigan law. After a hearing, the trial court determined that the state statutes were not preempted by the FHA because there was no conflict between the state statutes and the federal act. In the order of permanent injunction issued on December 14, 1990, the trial court permanently enjoined the DSS from issuing any further licenses for adult foster care facilities without compliance with the relevant state statutory provisions, but exempted the existing facility operating in the township from the order.

On appeal, defendants argue that the provisions set forth in the Adult Foster Care Facility Licensing Act and the Township Rural Zoning Act conflict with the language of the FHA and thus are invalid under the Supremacy Clause of the United

States Constitution. US Const, art VI, cl 2. We disagree.

The Fair Housing Act, as amended, makes it illegal:

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter,

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

\* \* \*

(3) for purposes of this subsection, discrimination includes—

\* \* \*

(B) a refusal to make reasonable accommodations and rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . . [42 USC 3604.]

As set forth in 42 USC 3615, the FHA invalidates any state or local law requiring or permitting a discriminatory housing practice:

Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subtitle; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.

In affirming the trial court's order of permanent

injunction, we rely upon the recent federal case of *Familystyle of St Paul, Inc v City of St Paul,* 728 F Supp 1396 (D Minn, 1990), aff'd 923 F2d 91 (CA 8, 1991), which addressed the issue whether the FHA preempts state or local laws regulating commercial facilities housing handicapped people.

The facts of *Familystyle* are similar to those in the case at bar. In that case, the plaintiff, Familystyle, which operates "community residential facilities" for developmentally disabled or mentally ill persons, challenged the 1,320-foot special separation requirement between residential homes provided under statutes of the State of Minnesota and an ordinance of the City of St. Paul as violative of the Fair Housing Amendments Act of 1988. The plaintiff argued that the challenged state and local laws were invalidated under § 3615 of the FHA because they conflicted with the act's broad provisions prohibiting discriminatory housing practices against handicapped people. In support of this position, Familystyle pointed to the House Committee Report accompanying the FHA, 1988 US Code Cong & Admin News, p 2185, which states:

> The Committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.

In ruling that the challenged state and local laws were not preempted by the FHA, the district court in *Familystyle* observed that the challenged laws, which related only to the licensure and placement of residential programs, did not limit or

prohibit handicapped people from living within 1,320 feet of a residential facility, and thus did not directly conflict with the language of the FHA. The court further remarked:

> There is a significant difference between laws which directly regulate individuals and laws which regulate institutions. It is doubtful that in seeking to provide fair housing for the handicapped, the federal government intended to preempt all local regulation of the facilities which house them. Surely the Congress intended states to maintain some control over such facilities. [728 F Supp 1401.]

On appeal, the Eighth Circuit Court of Appeals, agreeing with the district court that the challenged state laws and local ordinances were not preempted by the FHA, noted that "Congress did not intend to abrogate a state's power to determine how facilities for the mentally ill must meet licensing standards" and that "[t]he challenged state laws and city ordinance do not affect or prohibit a retarded or mentally ill person from purchasing, renting, or occupying a private residence or dwelling." 923 F2d 94.

In the case at bar, we likewise hold that the FHA does not preempt the challenged state statutes. As in *Familystyle,* the challenged statutory requirements in the present case regulate the licensing of adult foster care institutions, and do not limit the housing choices of handicapped or developmentally disabled individuals. Although defendants argue that the challenged statutes make unavailable or deny housing to the handicapped in violation of 42 USC 3604(f)(1)(B), we note that the challenged statutory requirements pertaining to notice, "excessive concentration," and the distance between adult foster care facilities regulate commercial

institutions or enterprises establishing adult foster care facilities and make no attempt to prohibit handicapped or mentally ill people from residing wherever they choose. As such, the statutory provisions regarding the licensing and placement of adult foster care facilities are not in conflict with the FHA.

While we recognize that the clear intent of the FHA is to prohibit discrimination against handicapped individuals in the housing market, we decline to read the remedial purposes of the act broadly to apply to profit-oriented enterprises operating adult foster care facilities for handicapped people. In this regard, we fully agree with the observation of the Eighth Circuit Court of Appeals that "Congress did not abrogate a state's power to determine how facilities for the mentally ill must meet licensing standards." *Id.* If Congress wants to expand the scope of the federal act to include commercial enterprises or organizations, then Congress should say so.

Accordingly, we hold that the Adult Foster Care Facility Licensing Act and the Township Rural Zoning Act do not conflict with the FHA, and thus are not preempted by the federal act.

Affirmed.