**Geraldine LARKIN, Plaintiff,**

**Michigan Protection and Advocacy Service, Intervenor,**

v.

**STATE OF MICHIGAN, et al., Defendants.**

**Civ. A. No. 93–CV–73871–DT.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 1, 1994.

Memorandum Opinion and Order on Reconsideration Jan. 3, 1995.

Gregory J. Bator, James H. Abresch, Bator & Zartarian, P.C., Birmingham, MI, for plaintiff.

Stephen H. Garrard, Lansing, MI, for defendants, State of Mich. and State of Mich. Dept. of Social Services.

Angelo A. Plakas, Angelo A. Plakas, P.C., Westland, MI, Carol A. Rosati, Johnson, Rosati, Galica & Shifman, P.C., Farmington Hills, MI, for defendant, City of Westland.

Stuart R. Hakola, Marquette, MI, for intervenor.

## MEMORANDUM OPINION AND ORDER

FRIEDMAN, District Judge.

This case requires the court to determine if a state statutory scheme restricting the location of adult foster care facilities and requiring neighbor notification is preempted by the Fair Housing Amendments Act and/or violative of equal protection.

The case comes before the court on Plaintiff Geraldine Larkin's motion for summary judgment; Plaintiff Intervenor Michigan Protection and Advocacy Service's motion for summary judgment; Defendants State of

Michigan and Michigan Department of Social Services' motion for dismissal; and Defendant City of Westland's motion for dismissal or summary judgment.

In June, 1993, Plaintiff Geraldine Larkin attempted to open an adult foster care home in the City of Westland where she could live as well as provide adult foster care to four handicapped individuals. Plaintiff requested a license to operate such a home from the Michigan Department of Social Services. The licensing process is governed by the Adult Foster Care Facility Licensing Act, M.C.L. § 400.701 *et seq.* M.C.L. § 400.716(1) prevents the issuance of a temporary license if it would "substantially contribute to an excessive concentration" of community residential facilities within a city, village, or township of Michigan. M.C.L. § 400.716(3) requires compliance with the City or Village Zoning Act, M.C.L. § 125.583b, which reads, in pertinent part:

At least 45 days before licensing a residential facility [which provides resident services or care for six or fewer persons under 24–hour supervision], the state licensing agency shall notify the council or designated agency of the city or village where the proposed facility is to be located to review the number of existing or proposed similar state licensed residential facilities whose property lines are within a 1,500 foot radius of the property lines of the proposed facility. The council of a city or village or an agency of the city or village to which the authority is delegated, when a proposed facility is to be located within the city or village, shall give appropriate notification ... to those residents whose property lines are within a 1,500 foot radius of the property lines of the proposed facility. A state licensing agency shall not license a proposed residential facility if another state licensed residential facility exists within the 1,500 foot radius of the proposed location, unless permitted by local zoning ordinances, or if the issuance of the license would substantially contribute to an excessive concentration of state licensed residential facilities within the city or village. In a city with a population of 1,000,000 or more a state licensing agency shall not license a proposed residential facility if another such facility exists within a 3,000–foot radius of the proposed location, unless permitted by local zoning ordinances.

M.C.L. § 125.583b(4). In addition, M.C.L. § 400.732(1) requires the department to notify the clerk of the city, village, or township where a proposed adult foster care facility is to be located at least 45 days before the issuance of a license.

After Larkin filed her application, the Department of Social Services, pursuant to M.C.L. § 125.583b(4), notified the City of Westland that Plaintiff had requested such a license. Plaintiff's application was denied, pursuant to M.C.L. § 125.583b(4), because there was another residential facility located within 1,500 feet of her proposed facility.

Plaintiff claims that these Michigan statutes violate the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3604(f), and the Equal Protection and Due Process Clauses of the United States Constitution. The FHAA declares that it is unlawful:

(f)(1): To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) the buyer or renter;

(B) a person residing in or intending to reside in that dwelling ...; or

(C) any person associated with that person.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in or intending to reside in that dwelling ...; or

(C) any person associated with that person.

(3) For purposes of this subsection, discrimination includes—

(B) a refusal to make accommodations in rules, policies, practices, or services, when such accommodations may be neces-

sary to afford equal opportunity to use and enjoy a dwelling ...

42 U.S.C. § 3604(f)(1), (2), & (3).

Plaintiff alleges that the Defendants State of Michigan and the Michigan Department of Social Services, by enacting and enforcing M.C.L. § 125.583b, M.C.L. § 400.716, and M.C.L. § 400.732, violated the Fair Housing Amendments Act and Plaintiff's rights under the Equal Protection and Due Process Clauses of the U.S. Constitution.

Plaintiff additionally alleges that Defendant City of Westland discriminated against Plaintiff and violated the Fair Housing Act Amendments by choosing not to waive the excessive concentration/1,500-foot rule and thereby not making a reasonable accommodation, as provided by 42 U.S.C. § 3604(f)(3)(B).

Plaintiff requests a declaration that M.C.L. § 125.583b, M.C.L. § 400.716, and M.C.L. § 400.732 are in violation of the Fair Housing Amendments Act of 1988; an order requiring defendants to repeal these statutes; and an order permanently enjoining the State of Michigan for reenacting these statutes.

The Michigan Protection and Advocacy Service intervened on behalf of Plaintiffs, and the Michigan Municipal League filed an *amicus curiae* brief in support of the Defendant City of Westland.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

There does not appear to be a genuine dispute on any of the material facts in this case. Neither party disputes that Plaintiff Larkin submitted an application for licensure of an adult foster care home and that her application was denied because there was another similar home within 1,500 feet of the proposed site. Consequently, the only remaining disputes are those of law, specifically, whether or not the Michigan statutory scheme violates the Fair Housing Amendments Act (FHAA) and/or the Equal Protection Clause of the U.S. Constitution.

The parties dispute which legal standard should be used in determining a FHAA violation. While Plaintiffs [1] claim that a standard higher than the traditional rational basis/legitimate government function test should be applied, Defendants contend that a rational basis review is appropriate. Plaintiffs argue that the FHAA does not incorporate nor mandate this type of equal protection review and that the FHAA went beyond the constitutional protection for the handicapped, which are not a protected class under equal protection analysis.

Even using Defendants' choice of standard, which is easier to meet than that which Plaintiffs advocate, the court finds that there is no rational legal basis for the provision in M.C.L. § 125.583b(4), which prevents the licensing of a residential facility within 1,500 feet of another similar institution and requires notification to those residents whose property lines are within a 1,500-foot radius of the property lines of the proposed facility. The court additionally finds that the state statutory scheme violates the FHAA using Plaintiffs' choice of standard as well, as M.C.L. § 125.583b(4) and § 400.716(3) have a discriminatory effect on handicapped persons.

Plaintiffs rely on the analysis of three factors set forth by the Sixth Circuit in *Arthur v. City of Toledo, Ohio,* 782 F.2d 565 (6th Cir.1986), which derived from a four-prong analysis established in *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978), in determining if a facially neutral statute nonetheless produces a discriminatory effect. The three factors are: (1) the strength of the showing of discriminatory effect; (2) defendant's interest in taking the action complained of; and (3) whether plaintiff seeks to compel the defendant to affirmatively provide housing for members of

1. The arguments advanced by Plaintiff Larkin and Intervenor Michigan Protection and Advocacy Service are similar and complement one other. As such, the court has grouped their arguments together and uses the term "Plaintiffs" to refer to both parties.

a protected class or merely restrain defendant from interfering with individual property owners wishing to provide such housing. *City of Toledo*, 782 F.2d at 575. The court is aware of these three factors and has taken them into consideration.

Plaintiffs claim that the notice, distancing, and excessive concentration requirements in the Adult Foster Care Facility Licensing Act (AFCFLA) have a disparate impact on people with disabilities. Plaintiffs argue that these provisions apply only to housing for persons with disabilities. Similar provisions do not exist with respect to housing for individuals who do not have a disability. Plaintiffs claim that both the distancing and the excessive concentration provisions limit where adult foster care (AFC) homes can be located, thereby limiting the housing choices of persons with handicaps. The 1,500 foot provision does this by restricting the location of AFC homes, and the excessive concentration provision caps the number of AFC homes that can exist in a given municipality.

Similarly, Plaintiffs argue that the notification requirements (i.e., the requirement that DSS notify the municipality, which then is to notify all neighbors within 1500 feet of the proposed site) have the effect of making housing unavailable to people with disabilities, as they often provoke "negative reactions from neighbors of the proposed group homes." *Potomac Group Home Corp. v. Montgomery County, MD*, 823 F.Supp. 1285, 1290 (D.Md.1993). This can result in a further loss of housing options for handicapped persons.

Plaintiffs note that the discriminatory impact of the AFCFLA distancing requirement has affected many more disabled people than just the four individuals who were to live with Larkin. From June 1, 1993, through March, 1994, approximately 45 AFC licenses were denied because a similar facility existed less than 1,500 feet from the proposed home.

Defendants argue that there are numerous other structures and homes within the City of Westland and throughout the State of Michigan where an adult foster care facility can be located. Plaintiff could have located another home in Westland which did not exist within 1,500 feet of another licensed facility, or the handicapped persons themselves could have purchased or leased the home desired by Plaintiff. Defendants rely on *Familystyle of St. Paul v. City of St. Paul*, 923 F.2d 91 (8th Cir.1991) (upholding the validity of state statute and local zoning ordinances limiting the placement of residential facilities for retarded or mentally ill persons because the dispersal requirements constituted the legitimate governmental interest of deinstitutionalization), and the Michigan Court of Appeals in *Plymouth Charter Township v. Department of Social Services*, 198 Mich.App. 385, 501 N.W.2d 186 (1993) (holding that the Michigan statutory scheme which limits where adult foster care homes can be located and requires neighbor notification is not preempted by the FHAA). These cases drew a distinction between commercial facilities, which are regulated and licensed by the State of Michigan, and a home purchased or rented by a handicapped individual, which is not regulated by the state statutory scheme at issue.

Plaintiffs argue that there is no real distinction between regulating commercial facilities and handicapped individuals because, due to their handicaps, persons who are mentally and/or physically handicapped need supervision, which can only be provided in a licensed facility which is subject to the 1,500-foot restriction. In *Smith & Lee Associates, Inc. v. City of Taylor, Michigan*, 13 F.3d 920, 931 (6th Cir.1993), the Sixth Circuit stated, "[W]e recognize that the handicapped may have little choice but to live in a commercial home if they desire to live in a residential neighborhood."

Defendants claim that a legitimate governmental interest exists for their statutory scheme, that is, the integration of handicapped individuals into mainstream society, thereby ensuring that no one area or neighborhood becomes saturated with similar institutions. Defendants argue that the Michigan statutory scheme prevents the formation of "ghettos" of AFC homes, which would result in reinstitutionalization. Defendants claim that they are trying to provide a "normal" environment for handicapped persons through these dispersal requirements, which

are the best methods available to promote this compelling governmental concern.

Plaintiffs claim that the "ghettoization" to which Defendants refer resulted from earlier state exclusionary zoning policies which prevented homes for handicapped persons from locating in single-family residential zones. These discriminatory policies were prohibited by the Michigan Legislature in 1976, at the same time that the legislature also established the restrictions at issue in the present case. It follows, then, that if the zoning policies which resulted in the growth of handicapped "ghettos" have long since been removed, the threat of such "ghettoization" should be eliminated. Defendants do not assert any reason why adult foster care homes will currently choose to congregate in the same areas.

Plaintiffs also doubt that integration is the real reason for the adoption of the dispersal provisions. The court in *Horizon House Developmental Services, Inc. v. Township of Upper Southampton*, 804 F.Supp. 683, 695 (E.D.Pa.1992), *aff'd*, 995 F.2d 217 (3d Cir. 1993), for example, found evidence that the dispersal rule was based on unfounded fears about people with handicaps. *Horizon House*, 804 F.Supp. at 695.[2] *Horizon House*, on which plaintiffs rely, involved a township ordinance similar to that of the State of Michigan. It imposed a distance requirement of 1,000 feet for group homes for mentally retarded persons. *Id.* at 685. The court held that the ordinance violated the FHAA because it was facially invalid, purposefully discriminatory, and had a disparate impact upon the housing choices of handicapped persons. *Id.* at 693–7. The court found that preventing the "clustering" of people with disabilities to promote their "integration" into the community was not an adequate justification under the FHAA. *Id.* at 694–95. The court further held that the ordinance had no rational basis and was a violation of equal protection. *Id.* at 697, 700.

In the present case, Plaintiffs argue that integration is not a legitimate governmental interest by analogy to racial quotas in housing in the so-called "tipping cases." In *Unit-ed States v. Starrett City Associates*, 840 F.2d 1096 (2d Cir.1988), *cert. denied*, 488 U.S. 946, 109 S.Ct. 376, 102 L.Ed.2d 365 (1988), the court struck down racial quotas on African-Americans and Hispanic residents, which were designed to encourage white residents and maintain racial integration in an apartment complex. The court held that the impact of the quotas fell squarely on those for whom the Fair Housing Act was intended to provide housing opportunities. *Id.* at 1102.

The court in *Horizon House* relied on *Starrett City*:

> "Under the analysis of ... *Starrett City*, the 1,000 foot requirement is plainly illegal. The 1,000 foot rule is effectively indistinguishable from a ceiling quota imposed on minorities for integration maintenance purposes. By its terms, the distance requirement disadvantages a class of people protected by the FHAA by indefinitely limiting access of that class to housing, by setting an upper limit or cap or quota on the number of persons with handicap who may live in the Township."

*Horizon House*, 804 F.Supp. at 695.

The court finds Plaintiffs' arguments and the decision in *Horizon House* persuasive and believes that there is no rational basis for the 1,500-feet spacing requirement and the provision that all neighbors within 1,500 feet be notified of the proposed site. As such, the court finds that M.C.L. § 125.583b(4) and § 400.716(3) violate the FHAA. As there is no rational basis for such requirements, the court also finds that Defendants State of Michigan and Michigan Department of Social Services violated the Equal Protection Clause through their enactment and enforcement of these provisions. The court finds that the Michigan statutory scheme at issue has a discriminatory effect on handicapped persons.

■■■ Due to the conflict between the statutes at issue and the FHAA, which prohibits discrimination in housing based on handicap, the court finds that M.C.L. § 125.583b(4) and § 400.716(3) are preempt-

---

**2.** The court is aware that property values are often concerns as well, but notes that this is not a legal basis for such restrictions. Defendants agree.

ed by the FHAA. Federal law may supersede state law in any of three ways. *Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984). First, Congress can preempt state law by so stating in express terms. *Id.* at 469, 104 S.Ct. at 2523; *California Federal Savings and Loan Association v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Second, Congress may indicate an intent to occupy an entire field of regulation. *Michigan Canners,* 467 U.S. at 469, 104 S.Ct. at 2523; *California Federal,* 479 U.S. at 281, 107 S.Ct. at 689. Third, Congress can preempt state law to the extent that the state law actually conflicts with federal law. *Michigan Canners,* 467 U.S. at 469, 104 S.Ct. at 2523; *California Federal,* 479 U.S. at 281, 107 S.Ct. at 689. Such a conflict arises when compliance with both state and federal law is impossible or because state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

The third basis is at issue in the instant case, that is, the conflict between the Michigan statutory scheme and the FHAA. Although Defendants contend. that the state provisions complement federal law, the court finds that, in fact, they conflict.

Plaintiffs argue that the state's 1,500–foot rule conflicts with the FHAA's federal mandate to remove barriers that limit the housing choices of handicapped persons. The House Report reveals the legislative intent of the FHAA:

"While state and local governments have authority to protect safety and health, and to regulate use of land, that authority has sometimes been used to restrict the ability of individuals with handicaps to live in communities. This has been accomplished by such means as the enactment or imposition of health, safety or land-use requirements on congregate living arrangements among non-related persons with disabilities. Since these requirements are not imposed on families and groups of similar size of other unrelated people, these re-

quirements have the effect of discriminating against persons with disabilities. The Committee intends that the prohibition against discrimination against those with handicaps apply to . zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulation, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community ... Another method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations on health, safety and land-use in a manner which discriminates against people with disabilities. Such discrimination often results from false or overprotective assumptions about the needs of handicapped people, as well as unfounded fears of difficulties about the problems that their tenancies may pose. These and similar practices would be prohibited."

H.R.Rep. No. 711, 100th Cong., 2d Sess. 24 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2185 (footnotes omitted). Plaintiffs explain that because the state statutes serve to limit the ability of handicapped people to live in the residence of their choice, they conflict with the purpose of the FHAA.

Defendants argue instead that state law complements federal law. Defendants again draw a distinction between the protection of individual handicapped persons from housing discrimination, which the FHAA is designed to do, and the regulation of commercial facilities, where more than one handicapped persons reside, which the challenged ordinances do.

Defendants rely on *Familystyle* and *Plymouth Township,* discussed *supra,* which held that similar Minnesota statutes and the identical Michigan statutes, respectively, were not preempted by the FHAA. These cases held that because the state laws at issue do not prohibit handicapped *individuals* from obtaining housing or living in any community in the state, they do not violate the FHAA.

The court agrees with Plaintiffs that this distinction is illusory. Notwithstanding the

decisions in *Familystyle* and *Plymouth*, this court finds that by regulating residential facilities, the Michigan statutes inherently regulate and consequently, discriminate against handicapped individuals. The House Report, *supra*, outlines the types of local zoning regulations that the FHAA is intended to prohibit. The Michigan statutes at issue are clearly implicated. As such, the Michigan statutory scheme conflicts with and is preempted by the FHAA.

■ Both federal and state law favor severability of those portions of statutes which are found invalid from the remainder of the statute. The Michigan statutory scheme itself clearly favors severability:

"In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable."

M.C.L. § 8.5.

In addition, Michigan state cases have held that offending portions of a statute could be severed from the remainder. *See Detroit Osteopathic Hospital Corp. v. City of Southfield*, 377 Mich. 128, 139 N.W.2d 728 (1966) (severability of ordinance valid in zoning context); *Eastwood Park Amusement Co. v. Stark*, 325 Mich. 60, 38 N.W.2d 77 (1949) (severability of ordinance valid in licensing context, even though there is no severability clause in ordinance). Federal law also favors severability. *See Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). Thus, the court finds that M.C.L. § 125.583b(4) and § 400.716(3) are severable from the remaining statutory scheme.

■ The court rejects Plaintiffs' argument that Defendant City of Westland's refusal to make a "reasonable accommodation" for Plaintiff's application constitutes an independent violation of the FHAA, 42 U.S.C. § 3604(f)(3)(B).

Plaintiffs claim that it would have been possible for the City of Westland to issue a license to Plaintiff, despite the 1,500–feet limitation, as there is a box on the License Application Notice form that Westland could have checked which authorizes issuance of a license to a proposed facility even if it is located less than 1,500 feet from an existing similar facility. Plaintiff contends that Westland discriminated against Plaintiff by refusing to make this "reasonable accommodation."

Defendant Westland claims that DSS had no legal basis to draft the form as it did. Westland further argues that it lacks the authority to adopt local zoning ordinances which would allow the placement of similar facilities within 1,500 feet of each other. [M.C.L. § 125.583b(4) states that facilities cannot be located within 1,500 feet of one another, "unless permitted by local zoning ordinances"]. *See City of Livonia v. Dept. of Social Services*, 423 Mich. 466, 378 N.W.2d 402 (1985) (finding that all local zoning ordinances were superseded by the AFCFLA and that the City of Livonia lacked the ability to regulate through its zoning ordinances facilities housing six or less individuals).

*Plymouth Charter Township v. Department of Social Services*, 198 Mich.App. 385, 501 N.W.2d 186 (1993), the applicable law in Michigan at the time Plaintiff applied for her license, required that the State of Michigan enforce the statutory scheme at issue by holding that it was not preempted by the FHAA. The court finds that the City of Westland appropriately complied with existing state law in denying Plaintiff's application. A variance was not requested by Plaintiff at the time, nor was it available. Consequently, the court finds no reason to retain the City of Westland as a party in this case. Defendant City of Westland must therefore be dismissed.

The court finds that there is no rational basis for the Michigan statutory scheme at issue. As such, M.C.L. § 125.583b(4) and

§ 400.716(3) violate the FHAA and the Equal Protection Clause. The court finds that these provisions have a discriminatory effect on handicapped persons. As a result of the conflict between the Michigan statutory scheme and the FHAA, the court finds that the FHAA preempts M.C.L. § 125.583b(4) and § 400.716(3). These provisions can and must be severed from the remaining statutory scheme. The court also finds that Defendants State of Michigan and Michigan Department of Social Services violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution through their enactment and enforcement of M.C.L. § 125.583b(4) and § 400.716(3).

Accordingly, the court permanently enjoins the State of Michigan and the Michigan Department of Social Services from enforcing M.C.L. § 125.583b(4) and § 400.716(3) and grants Plaintiff and Intervenor's motions for summary judgment. The court denies Defendants State of Michigan and Michigan Department of Social Services' motions for dismissal. The court grants Defendant City of Westland's motion for dismissal.

Although Plaintiff prays for damages resulting from lost business, the Eleventh Amendment and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), prohibit monetary awards against the state or a state agency.

Accordingly,

IT IS ORDERED THAT Plaintiff and Intervenor's motions for summary judgment be granted; Defendant City of Westland's motion for dismissal be granted; and Defendants State of Michigan and Michigan Department of Social Services' motions for dismissal be denied, and they are permanently enjoined from enforcing M.C.L. § 125.583b(4) and § 400.716(3).

### MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

This matter is presently before the court on Plaintiff's motion for reconsideration and clarification of judgment. On November 1, 1994, the court issued an order granting Plaintiff Larkin and Intervenor Michigan Protection and Advocacy Service's motions for summary judgment, granting Defendant City of Westland's motion for dismissal, and denying Defendants State of Michigan and Michigan Department of Social Services' motions for dismissal. Finding that M.C.L. § 125.583b(4) and § 400.716(3) violate the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3604(f), and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the court permanently enjoined the State of Michigan and the Michigan Department of Social Services from enforcing these provisions.

Plaintiff Larkin now brings this motion for reconsideration and clarification of judgment, as the court did not also grant Plaintiff's request to enjoin enforcement by Defendants of M.C.L. § 400.732(1). Defendants State of Michigan and Michigan Department of Social Services filed a response in which they concurred with Plaintiff's motion for a clarification of the court's order. Pursuant to E.D.Mich. LR 7.1(e)(1), the court shall decide this motion without oral argument.

■ The provision at issue, M.C.L. § 400.732(1), of the Adult Foster Care Facility Licensing Act, M.C.L. § 400.701 *et seq.,* states:

> The department shall notify the clerk of the city, village, or township where a proposed adult foster care facility is to be located at least 45 days before the issuance of a license.

The court did not rule on the constitutionality of this provision because the parties did not address it in any depth in either their briefs or oral arguments in support of their motions for summary judgment and/or dismissal. Plaintiffs summarily argued that the notice requirements (presumably those in both M.C.L. § 125.583b(4) and § 400.732(1)), in addition to the distancing and excessive concentration requirements, were discriminatory. Both parties focused their debate and arguments to a greater extent on the notice requirements in M.C.L. § 125.583b(4), of the City or Village Zoning Act, which provide that a state licensing agency notify the municipality where a proposed facility is to be located to review the number of existing or

proposed facilities that are within a 1,500 foot radius of the proposed facility. The statute further requires that the city notify all neighbors within 1,500 feet of the proposed site and that the state licensing agency deny licensure to the proposed facility if another facility exists within 1,500 feet or if the issuance of the license would "substantially contribute to an excessive concentration of state licensed residential facilities within the city or village." M.C.L. § 125.583b(4).

In its order of November 1, 1994, the court found that there is no rational legal basis for M.C.L. § 125.583b(4). On further review, the court now finds that there is also no rational legal basis for M.C.L. § 400.732(1), which is similar to M.C.L. § 125.583b(4). Both provisions require that the department of social services notify a clerk or agency of the municipality where the proposed facility is to be located at least 45 days before issuance of a license. M.C.L. § 125.583b(4) requires this notification because, as discussed *supra*, the statute further demands that (1) the municipality review the existing or proposed facilities that are located within 1,500 feet of the proposed facility, (2) the municipality notify neighbors within 1,500 feet of the proposed facility, and (3) the state licensing agency deny licensure to the proposed facility if another facility exists within 1,500 feet or if it would substantially contribute to an excessive concentration of such facilities.

In contrast, M.C.L. § 400.732(1) does not provide any further directives to either the municipality or the department of social services once the department notifies the municipality of the location of the proposed facility. Defendants do not provide a reason for such a notification requirement. The justifications advanced by Defendants in support of M.C.L. § 125.583b(4), i.e., the deinstitutionalization and integration of handicapped persons, were not argued on behalf of the notice requirement in M.C.L. § 400.732(1). Not only do these justifications appear to be inapplicable to M.C.L. § 400.732(1), but the court has held that they are not rational bases for upholding the notification requirements in M.C.L. § 125.583b(4), one of which is similar to that in M.C.L. § 400.732(1).

Therefore, as Defendants have not offered a reason for the notification provision in M.C.L. § 400.732(1), and because it is similar to such a requirement in M.C.L. § 125.583b(4), for which the court has held that there is no rational basis, the court now finds that there is no rational legal basis for M.C.L. § 400.732(1). The court finds that M.C.L. § 400.732(1) violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and that this provision has a discriminatory effect on handicapped persons. Consequently, the court permanently enjoins the State of Michigan and the Michigan Department of Social Services from enforcing M.C.L. § 400.732(1). Accordingly,

IT IS ORDERED that Plaintiff's motion for reconsideration and clarification of judgment be granted and that Defendants State of Michigan and Michigan Department of Social Services be permanently enjoined from enforcing M.C.L. § 400.732(1).

Dated: Jan. 3, 1995.